ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAY 2 0 2014

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVEN E. SLAWSON | Criminal Indictment<br><br>No. **1:14 CR-0186** |

THE GRAND JURY CHARGES THAT:

## COUNT ONE
### Conspiracy to Commit Securities Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1. Beginning in early 2005, and continuing through in or about July 2010, the exact dates being unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendant, STEVEN E. SLAWSON, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with COOPERATOR NUMBER 1 and with others known and unknown to the Grand Jury to commit certain offenses against the United States, to wit:

### OBJECTS OF THE CONSPIRACY

2. To knowingly and willfully execute and attempt to execute a scheme and artifice (1) to defraud other persons in connection with stock securities of Carter's, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 ("The Exchange Act") (Title 15, United States Code, Section 78l), and that was required to file reports under Section 15(d) of The Exchange Act, and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, any money and property in connection with the

purchase and sale of stock securities of Carter's, Inc., an issuer with a class of securities registered under Section 12 of The Exchange Act, and that was required to file reports under Section 15(d) of The Exchange Act, in violation of Title 18, United States Code, Section 1348; and

3. To knowingly devise and intend to devise a scheme and artifice to defraud Carter's, Inc. and to obtain money and property from Carter's, Inc. by means of materially false and fraudulent pretenses and representations, and by omission of material facts, in violation of Title 18, United States Code, Section 1343.

### BACKGROUND

4. At all times relevant to this Indictment:

a. The defendant, STEVEN E. SLAWSON, was a co-founder and general partner in Titan Capital Management LLC, a hedge fund manager located in Parsippany, New Jersey. Titan Capital Management managed a hedge fund called TCMP3 Partners, L.P. ("TCMP3"), through an investment advisory entity known as TCMP3 Capital LLC. In connection with his duties at Titan Capital Management, SLAWSON co-managed a multimillion dollar portfolio of the securities of publicly-traded companies, making investment decisions and causing the execution of securities transactions for the benefit of TCMP3. SLAWSON was also an investor in TCMP3.

b. COOPERATOR NUMBER 1 was a retired equity research analyst formerly associated with the New York, New York office of a prominent global financial institution, and resided in New York. COOPERATOR NUMBER 1 was a paid outside consultant to, and an investor in, TCMP3.

2

c. Carter's, Inc. ("Carter's") was a public company registered in Delaware and headquartered in Atlanta, Georgia, which marketed clothing and apparel for babies and young children in the United States. Carter's common stock was listed on the New York Stock Exchange under the stock ticker symbol, "CRI." Carter's securities were registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12(b) of the Exchange Act, and the Company was required to file reports with the SEC pursuant to Section 15(d) of the Exchange Act. Carter's policies prohibited the unauthorized disclosure of Carter's confidential business information.

d. Eric M. Martin was employed by Carter's from in or about January 2003 until his separation from Carter's on March 24, 2009, first as Director of Investor Relations and later as Vice President of Investor Relations. During his employment with Carter's, Martin worked in the Company's corporate headquarters in Atlanta, Georgia. Martin's position afforded him access to material, non-public information of Carter's, including internal information about the Company's business, financial performance, and anticipated earnings and quarterly and annual financial results, in advance of the release of such information to shareholders and the SEC ("quarterly and annual earnings releases"). After his separation from Carter's, Martin continued to reside in Georgia.

e. Richard T. Posey was employed as a Vice President of Operations for various Carter's brands and divisions and later as Vice President of Operations for the Company's wholesale sales business from in or about July 2002 until his

3

separation from Carter's in early 2013. During his employment with Carter's, Posey worked in the Company's corporate headquarters in Atlanta, Georgia. Posey's position afforded him access to material, non-public information of Carter's, including internal information about the Company's business, financial performance, and anticipated earnings and quarterly and annual financial results, in advance of the Company's quarterly and annual earnings releases.

## MANNER AND MEANS

5. The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

a. From in or about February 2005 through in or about July 2010, the exact dates being unknown to the Grand Jury, the defendant, STEVEN E. SLAWSON, obtained material, non-public information ("Inside Information") of Carter's from COOPERATOR NUMBER 1 in advance of Carter's quarterly and annual earnings releases and other major corporate events, including information about Carter's quarterly and annual earnings per share ("EPS"), forward-looking guidance for the Company's future financial periods, and other financial performance information and whether such information would meet, miss, or beat internal company expectations and estimates, previously issued guidance, and analysts' consensus expectations and estimates.

b. COOPERATOR NUMBER 1 obtained the Inside Information from Martin from in or about February 2005 through in or about March 2009, and indirectly from Posey through Martin from in or about April 2009 through in or about July 2010 (the "Carter's Insider Sources").

4

c. The Carter's Insider Sources disclosed the Inside Information in violation of (1) fiduciary and other duties of trust and confidence that the Carter's Insider Sources owed to Carter's, (2) expectations of confidentiality held by Carter's, (3) written policies of Carter's regarding the use and safekeeping of confidential business information, and (4) the Carter's Insider Sources' agreements to maintain Carter's confidential business information in confidence and to refrain from using any confidential business information or Inside Information of Carter's for their own direct or indirect benefit, from trading on the basis of such information, and from disclosing any confidential business information or Inside Information to others for personal benefit, without prior approval from Carter's.

d. The Carter's Insider Sources disclosed the Inside Information with the understanding that the individuals to whom they disclosed the Inside Information would purchase and sell securities based on the information. The Carter's Insider Sources did so for their own personal benefit, which included but was not limited to stock tips about other publicly-traded companies, future networking opportunities, friendship, and other tangible and intangible benefits.

e. COOPERATOR NUMBER 1 in turn purchased and sold Carter's securities on the basis of this information, knowing that it had been provided by the Carter's Insider Sources in violation of the Carter's Insider Sources' fiduciary and other duties of trust and confidence to Carter's, earning illegal profits and illegally avoiding losses.

f. COOPERATOR NUMBER 1 also disclosed the Inside Information to the defendant, STEVEN E. SLAWSON, with the understanding that SLAWSON would cause the execution of transactions in Carter's securities on the basis of the information.

g. SLAWSON in turn caused Titan Capital Management to purchase and sell Carter's securities on the basis of the Inside Information, knowing that it had been disclosed by the Carter's Insider Sources in violation of the Carter's Insider Sources' fiduciary and other duties of trust and confidence to Carter's, earning illegal profits and illegally avoiding losses for Titan Capital Management.

h. From in or about March 2010 through in or about July 2010, the exact dates being unknown to the Grand Jury, Martin became an additional direct source of Inside Information for SLAWSON, repeatedly disclosing to SLAWSON Inside Information that had been disclosed to him by Posey, with the understanding that SLAWSON would cause the execution of transactions in Carter's securities on the basis of the information.

i. During and in furtherance of the conspiracy, COOPERATOR NUMBER 1 obtained confidential business information of Carter's via interstate wire communications, including by interstate telephone calls between Georgia and New York.

6. The following is an example of confidential business information and Inside Information that SLAWSON and COOPERATOR NUMBER 1 misappropriated from Carter's during and in furtherance of the conspiracy:

### Carter's October 27, 2009 Earnings Delay Announcement

a. On or about Thursday, October 22, 2009, after the close of business, Posey had an in-person meeting with Martin in Atlanta during which Posey disclosed Inside Information to Martin relating to an internal investigation of accounting irregularities at Carter's, the possibility of a financial restatement, and a potential delay of Carter's quarterly earnings release previously scheduled to be issued after the stock market closed on October 27, 2009.

b. Immediately after the meeting ended, at approximately 6:25 p.m. on or about October 22, 2009, Martin placed a telephone call from Georgia to COOPERATOR NUMBER 1 in New York that lasted approximately five minutes. During the call, Martin disclosed the Inside Information that he had received from Posey, but asked COOPERATOR NUMBER 1 to refrain from trading on the information until Martin had an opportunity to warn Martin's clients.

c. At approximately 9:42 a.m. on Friday, October 23, 2009, twelve minutes after the stock exchanges opened, Martin began selling his entire position in Carter's stock, 35,615 shares valued at approximately $1 million, in multiple online brokerage accounts controlled by Martin.

d. At approximately 2:38 p.m. on or about Monday, October 26, 2009, the next business day, COOPERATOR NUMBER 1 placed a telephone call from New York to Martin in Georgia that lasted approximately twelve minutes. During the call, Martin and COOPERATOR NUMBER 1 discussed the Inside Information that had been disclosed by Posey.

7

e.    At approximately 2:49 p.m. on or about October 26, 2009, COOPERATOR NUMBER 1 began selling his entire position in Carter's stock, 15,000 shares valued at over $400,000, in multiple online brokerage accounts controlled by COOPERATOR NUMBER 1.  COOPERATOR NUMBER 1 also purchased 100 put options, betting on Carter's stock price to decline significantly.

f.    At approximately 3:17 p.m. on or about October 26, 2009, COOPERATOR NUMBER 1 placed a telephone call to SLAWSON that lasted approximately one minute and 46 seconds.  During the call, COOPERATOR NUMBER 1 disclosed certain of the Inside Information that he had received from Martin.

g.  At approximately 3:19 p.m. on or about October 26, 2009, SLAWSON ordered the sale of TCMP3's entire position in Carter's common stock, 20,000 shares valued at over $500,000, in an account controlled by Titan Capital Management.

h.  At approximately 9:28 a.m. on or about October 27, 2009, two minutes before the stock market opened, Carter's issued a press release announcing that it would be delaying its earnings release for the third quarter of 2009 that was previously scheduled for the evening of October 27, 2009, in order to complete a review of its accounting for margin support to wholesale customers.  The news caused Carter's stock price to decline over 20% by the close of trading that day.

All in violation of Title 18, United States Code, Section 1349.

8

## COUNTS TWO through TWENTY-SIX
### Securities Fraud
### (18 U.S.C. § 1348 and 2)

7. The factual allegations set forth in Paragraphs 4 through 6 above are hereby realleged and incorporated by reference as if set forth in full herein. In addition, it is relevant to this Indictment that:

a. From in or about late 2008 through in or about July 2012, the exact dates being unknown to the Grand Jury, the defendant, STEVEN E. SLAWSON, maintained online brokerage accounts for personal securities trading at Fidelity Investments, in SLAWSON's own name and in the names of family members.

b. From in or about early 2008 through in or about mid-2010, the exact dates being unknown to the Grand Jury, Titan Capital Management maintained brokerage accounts for securities trading at Jefferies & Company, Inc., including an account for TCMP3 in the name, TCMP3 Partners LP.

8. From in or about July 2009, and continuing through in or about July 2010, the exact dates being unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendant, STEVEN E. SLAWSON, aided and abetted by COOPERATOR NUMBER 1, did knowingly and willfully execute and attempt to execute a scheme and artifice (1) to defraud other persons, in connection with stock securities of Carter's, Inc., and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, any money and property in connection with the purchase and sale of stock securities of Carter's, Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 ("The Exchange Act") (Title 15, United States

Code, Section 78l), and that was required to file reports under Section 15(d) of The Exchange Act.

## DEFENDANT'S SCHEME TO DEFRAUD

9.    The defendant, STEVEN E. SLAWSON, aided and abetted by COOPERATOR NUMBER 1, carried out the scheme and artifice to defraud by misappropriating Inside Information of Carter's, knowing that it had been disclosed by a Carter's insider in violation of fiduciary and other duties of trust and confidence that the insider owed to Carter's, so that SLAWSON could execute and cause the execution of securities transactions on the basis of the Inside Information.

10.  SLAWSON in turn executed and caused others to execute transactions in Carter's securities on the basis of the information for and on behalf of TCMP3, through its account at Jefferies & Company, Inc., and also for his own benefit, through one or more personal online brokerage accounts that he controlled at Fidelity Investments in the names of SLAWSON and his family members. SLAWSON thereby earned illegal profits and illegally avoided losses for TCMP3, SLAWSON, and SLAWSON's family.

## EXECUTION OF DEFENDANT'S SCHEME TO DEFRAUD

11.  On or about the dates identified in Column B of the chart set forth below, each date constituting a separate count as set forth in Column A, in the Northern District of Georgia and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and

promises, the defendant, STEVEN E. SLAWSON, aided and abetted by COOPERATOR NUMBER 1, executed and caused others to execute the securities transactions set forth in Column C on the basis of Inside Information that he obtained from COOPERATOR NUMBER 1, in the brokerage account identified in Column D:

| A<br><br>Count | B<br><br>Date<br>(On or About) | C<br><br>Transaction<br>(Amount<br>Approximate) | D<br><br>Account |
|---|---|---|---|
| TWO | 07-23-09<br>(approximately<br>10:18 a.m.) | Purchase of 5,000<br>shares of Carter's<br>common stock | Fidelity Investments<br>account in the name<br>Steven E. Slawson |
| THREE | 07-24-09<br>(approximately<br>9:43 a.m.) | Purchase of 1,000<br>shares of Carter's<br>common stock | Fidelity Investments<br>account in the name<br>K.A.S. |
| FOUR | 07-24-09<br>(approximately<br>9:44 a.m.) | Purchase of 2,500<br>shares of Carter's<br>common stock | Fidelity Investments<br>account in the name<br>Steven E. Slawson |
| FIVE | 07-27-09<br>(approximately<br>9:44 a.m.) | Purchase of 1,000<br>shares of Carter's<br>common stock | Fidelity Investments<br>account in the name<br>K.A.S. |
| SIX | 07-27-09<br>(beginning at<br>approximately<br>10:24 a.m.) | Purchase of 10,000<br>shares of Carter's<br>common stock | Jefferies & Company,<br>Inc. account in the<br>name TCMP3 Partners<br>LP |

| A | B | C | D |
| --- | --- | --- | --- |
| Count | Date (On or About) | Transaction (Amount Approximate) | Account |
| SEVEN | 07-28-09 (beginning at approximately 9:32 a.m.) | Purchase of 10,000 shares of Carter's common stock | Fidelity Investments account in the name Steven E. Slawson |
| EIGHT | 07-28-09 (approximately 10:36 a.m.) | Purchase of 1,000 shares of Carter's common stock | Fidelity Investments account in the name K.A.S. |
| NINE | 10-26-09 (beginning at approximately 3:19 p.m.) | Sale of 20,000 shares of Carter's common stock | Jefferies & Company, Inc. account in the name TCMP3 Partners LP |
| TEN | 10-26-09 (approximately 3:48 p.m.) | Sale of 5,000 shares of Carter's common stock at limit price of $28.55 | Fidelity Investments account in the name Steven E. Slawson |
| ELEVEN | 10-26-09 (approximately 3:49 p.m.) | Order for sale of 5,000 shares of Carter's common stock at limit price of $28.55 | Fidelity Investments account in the name Steven E. Slawson |
| TWELVE | 10-26-09 (approximately 3:51 p.m.) | Sale of 2,000 shares of Carter's common stock | Fidelity Investments account in the name K.A.S. |
| THIRTEEN | 10-26-09 (approximately 3:51 p.m.) | Order for sale of 6,335 shares of Carter's common stock at limit price of $28.50 | Fidelity Investments account in the name Steven E. Slawson |

| <u>A</u><br><br>Count | <u>B</u><br><br>Date<br>(On or About) | <u>C</u><br><br>Transaction<br>(Amount<br>Approximate) | <u>D</u><br><br>Account |
|---|---|---|---|
| FOURTEEN | 10-26-09<br>(approximately<br>3:56 p.m.) | Order for sale of 6,135 shares of Carter's common stock at limit price of $28.50 | Fidelity Investments account in the name Steven E. Slawson |
| FIFTEEN | 10-26-09<br>(approximately<br>3:58 p.m.) | Order for sale of 6,135 shares of Carter's common stock at limit price of $28.45 | Fidelity Investments account in the name Steven E. Slawson |
| SIXTEEN | 10-27-09<br>(approximately<br>7:23 a.m.) | Order for sale of 1,489 shares of Carter's common stock at limit price of $28.45 | Fidelity Investments account in the name Steven E. Slawson |
| SEVENTEEN | 02-24-10<br>(beginning at<br>approximately<br>11:10 a.m.) | Purchase of 5,000 shares of Carter's common stock | Jefferies & Company, Inc. account in the name TCMP3 Partners LP |
| EIGHTEEN | 02-24-10<br>(approximately<br>11:48 a.m.) | Purchase of 2,500 shares of Carter's common stock | Fidelity Investments account in the name K.A.S. |
| NINETEEN | 02-24-10<br>(approximately<br>12:03 p.m.) | Purchase of 5,000 shares of Carter's common stock | Fidelity Investments account in the name Steven E. Slawson |
| TWENTY | 06-22-10 | Sale of 100 December 18 call options to purchase shares of Carter's common stock | Fidelity Investments account in the name Steven E. Slawson |

| A<br>Count | B<br>Date<br>(On or About) | C<br>Transaction<br>(Amount Approximate) | D<br>Account |
|---|---|---|---|
| TWENTY-ONE | 06-22-10<br>(approximately<br>11:26 a.m.) | Sale of 30 December 18 call options to purchase shares of Carter's common stock | Fidelity Investments account in the name K.A.S. |
| TWENTY-TWO | 06-22-10<br>(approximately<br>1:02 p.m.) | Sale of 500 shares of Carter's common stock | Fidelity Investments account in the name Steven E. Slawson Custodian for J.S., Account No. xxx-xx8953 |
| TWENTY-THREE | 06-22-10<br>(approximately<br>1:04 p.m.) | Sale of 500 shares of Carter's common stock | Fidelity Investments account in the name Steven E. Slawson Custodian for J.S., Account No. xxx-xx8945 |
| TWENTY-FOUR | 07-13-10<br>(approximately<br>9:56 a.m.) | Sale of 50 August 21 call options to purchase shares of Carter's common stock | Fidelity Investments account in the name Steven E. Slawson |
| TWENTY-FIVE | 07-16-10<br>(approximately<br>10:41 a.m.) | Short sale of 5,000 shares of Carter's common stock | Fidelity Investments account in the name Steven E. Slawson |
| TWENTY-SIX | 07-19-10 | Sale of 50 August 21 call options to purchase shares of Carter's common stock | Fidelity Investments account in the name Steven E. Slawson |

All in violation of Title 18, United States Code, Sections 1348 and 2.

14

## COUNTS TWENTY-SEVEN through THIRTY-SIX
### Wire Fraud
### (18 U.S.C. § 1343 and 2)

12. The factual allegations set forth in Paragraphs 4 through 7 and 9 through 10 above are hereby realleged and incorporated by reference as if set forth in full herein. In addition, it is relevant to this Indictment that:

a. From in or about July 2009 through in or about July 2010, the exact dates being unknown to the Grand Jury, the defendant, STEVEN E. SLAWSON, obtained confidential business information of Carter's via interstate wire communications, including via interstate telephone calls between COOPERATOR NUMBER 1 in New York and Martin in Georgia.

b. From in or about March 2010 through in or about July 2010, the exact dates being unknown to the Grand Jury, SLAWSON also obtained confidential business information of Carter's via interstate telephone calls between SLAWSON in New Jersey and Martin in Georgia.

13. Between in or about July 2009 and in or about July 2010, the exact dates being unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendant, STEVEN E. SLAWSON, aided and abetted by COOPERATOR NUMBER 1, Martin, and others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud Carter's and to obtain money and property from Carter's by means of materially false and fraudulent pretenses and representations, and by omission of material facts, well knowing and having reason to know that said pretenses

15

and representations were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material.

## DEFENDANT'S SCHEME TO DEFRAUD

14. The object of the scheme and artifice to defraud was for the defendant, STEVEN E. SLAWSON, aided and abetted by COOPERATOR NUMBER 1 and others known and unknown to the Grand Jury, to deprive Carter's of the exclusive use of its intangible property; to wit, confidential business information, in order to enrich himself by purchasing and selling securities based on the information.

15. The defendant, STEVEN E. SLAWSON, aided and abetted by COOPERATOR NUMBER 1, Martin, and others known and unknown to the Grand Jury, carried out the scheme and artifice to defraud by causing a Carter's insider, Posey, to misappropriate confidential business information from his employer, Carter's, in violation of his confidentiality obligations to Carter's, duties of trust and confidence to Carter's, and his agreement to refrain from using or disclosing Carter's confidential business information without the prior approval of Carter's.

## EXECUTION OF DEFENDANT'S SCHEME TO DEFRAUD

16. On or about the dates identified in Column B of the chart set forth below, each date constituting a separate count as set forth in Column A, at the approximate times identified in Column C, in the Northern District of Georgia and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, and for obtaining money and

16

property from Carter's by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, the defendant, STEVEN E. SLAWSON, aided and abetted by COOPERATOR NUMBER 1, Martin, and others known and unknown to the Grand Jury, did knowingly and willfully cause to be transmitted by means of wire and radio communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, as described in Column D:

| **A** Count | **B** Date (On or About) | **C** Time (Approximate) | **D** Transmission |
|---|---|---|---|
| TWENTY-SEVEN | 07-23-09 | 10:03 a.m. | Telephone call between Georgia and New York |
| TWENTY-EIGHT | 07-23-09 | 10:10 a.m. | Telephone call between Georgia and New York |
| TWENTY-NINE | 07-24-09 | 12:00 p.m. | Telephone call between Georgia and New York |
| THIRTY | 07-28-09 | 2:32 p.m. | Telephone call between Georgia and New York |
| THIRTY-ONE | 10-26-09 | 2:38 p.m. | Telephone call between Georgia and New York |
| THIRTY-TWO | 02-22-10 | 10:07 a.m. | Telephone call between Georgia and New York |
| THIRTY-THREE | 02-24-10 | 10:06 a.m. | Telephone call between Georgia and New York |

17

| **A** | **B** | **C** | **D** |
| --- | --- | --- | --- |
| Count | Date (On or About) | Time (Approximate) | Transmission |
| THIRTY-FOUR | 06-22-10 | 10:38 a.m. | Telephone call between Georgia and New Jersey |
| THIRTY-FIVE | 07-08-10 | 3:35 p.m. | Telephone call between Georgia and New Jersey |
| THIRTY-SIX | 07-15-10 | 4:58 p.m. | Telephone call between Georgia and New Jersey |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**FORFEITURE PROVISION**

Upon conviction of one or more of the offenses alleged in Counts One through Thirty-Six of this Indictment, the defendant, STEVEN E. SLAWSON, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

18

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

A _____*True*_____ BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
*United States Attorney*

DAVID M. CHAIKEN
   *Assistant United States Attorney*
Georgia Bar No. 118618
david.chaiken@usdoj.gov

STEPHEN H. MCCLAIN
   *Assistant United States Attorney*
Georgia Bar No. 143186
stephen.mcclain@usdoj.gov

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181