IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

STEVEN E. SLAWSON,

                Defendant.

CRIMINAL CASE NO.

1:14-CR-00186-RWS-JFK

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Pending before the court is Defendant Steven E. Slawson's motion [Doc. 24] (1) to dismiss the indictment for failure to allege a crime and (2) to dismiss Count One as duplicitous and Defendant's motion [Doc. 25] for discovery seeking (1) a bill of particulars, (2) materials in the possession of the Securities Exchange Commission ("SEC"), and (3) to strike surplusage.[1] The Government opposes the pending motions. [Docs. 29, 30, 31, 32 and 33].[2]

---

[1] In the motion, Plaintiff also sought an order directing the Government to immediately provide a witness list, which the court denied at the pretrial conference, and to disclose all exculpatory materials, which the court granted at the pretrial conference in accordance with the pretrial order. Those requests will not be addressed further.

[2] The Government filed separate responses addressing each part of the two motions filed by Plaintiff.

## I.    The Indictment

On May 20, 2014, a federal grand jury sitting in this District returned a thirty-six count indictment charging Defendant Slawson with violations of 18 U.S.C. §§ 1343 (wire fraud), 1348 (securities fraud) and 1349 (conspiracy to commit wire and securities fraud).  The indictment also includes a forfeiture provision.  [Doc. 1].  In Count One, Defendant is alleged to have knowingly and wilfully conspired, from early 2005 through July 2010, with "Cooperator Number 1" and others known and unknown (a) to knowingly and wilfully execute and attempt to execute a scheme (1) to defraud others in connection with Carter's Inc. stock securities and (2) to obtain, by false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of Carter's Inc. stock securities, in violation of 18 U.S.C. § 1348, and (b) to knowingly and intentionally devise and attempt to devise a scheme to defraud Carter's Inc. and obtain money and property of Carter's Inc. by means of materially false and fraudulent pretenses and representations, and by omission of material facts, in violation of 18 U.S.C. § 1343.  [Doc. 1 ¶¶ 1.-3.].  This conspiracy is charged pursuant to 18 U.S.C. § 1349.  [Doc. 1].

In the background section of Count One, the participants are identified.  The indictment sets forth Defendant's ownership of, investment in, or involvement with companies, such as, Titan Capital Management LLC and TCMP3 Capital LLC, and management of multi-million dollar hedge funds, such as, TCMP3 Partners, L.P. ("TCMP3").  [Id. ¶ 4.a.].  Cooperator Number 1 is identified as a retired equity research analyst who was a paid consultant to and investor in TCMP3.  [Id. ¶ 4.b.]. Carter's Inc. is identified in pertinent part as a publicly traded company with common stock listed on the New York Stock Exchange as "CRI," with securities registered with the SEC and with policies prohibiting the unauthorized disclosure of Carter's Inc. confidential business information.  [Id. ¶ 4.c.].  Also identified as participants in the conspiracy are Eric M. Martin, who was employed by Carter's Inc. from January 2003 through March 24, 2009, working in corporate headquarters in Atlanta, Georgia, with access in advance of public release, due to his positions at Carter's Inc., to material, non-public confidential information, such as, financial performance, anticipated earnings and quarterly and annual financial results, and Richard T. Posey, who was employed by Carter's Inc. from July 2002 through early 2013, working in corporate headquarters in Atlanta, Georgia, with access in advance of public release, also due to his company positions, to material, non-public confidential information, such as,

3

financial performance, anticipated earnings and quarterly and annual financial results. [Id. ¶¶ 4.d.-e.].

The conspiracy count then provides information about the manner and means by which the conspiracy operated. From February 2005 through July 2010, Defendant is alleged to have obtained material, non-public information ("insider information"), as generally described and including quarterly and annual earnings per share, of Carter's Inc. from Cooperator Number 1 in advance of the public release of information, such as, in advance of quarterly and annual earnings releases and other major corporate events. [Id. ¶ 5.a.]. Cooperator Number 1 obtained this inside information from Martin from February 2005 through March 2009 and indirectly from Posey through Martin from April 2009 through July 2010. Martin and Posey are collectively identified as "Carter's Insider Sources." [Id. ¶ 5.b.]. The indictment alleges that Carter's Insider Sources disclosed this information in violation of (1) fiduciary and other duties of trust and confidence, (2) expectation of confidentiality, (3) Carter's Inc. written policies, and (4) agreements to maintain Carter's Inc. confidential business information and to refrain from use of such information in listed ways, including, for their own direct or indirect benefit or for stock trading on the basis of such information. However, as alleged, Carter's Insider Sources disclosed the

4

information understanding that the individuals receiving it would purchase and sell securities based on the information, and they did so for their own personal benefit as outlined.  [Id. ¶¶ 5.c.-d.].  And, from March 2010 through July 2010, Defendant Slawson also obtained insider information directly from Martin, who had obtained the information from Posey, with the understanding that Defendant would use the information to execute transactions in Carter's Inc. securities.  [Id. ¶ 5.h.].

Cooperator Number 1 used the Carter's Inc. insider information he obtained to purchase and sell Carter's Inc. securities and also disclosed the information to Defendant with the understanding Defendant would use the information to conduct transactions in Carter's Inc. securities.  [Id. ¶¶ 5.e.-g.].  Cooperator Number 1 obtained the insider information via interstate wire communications, including interstate telephone calls between Georgia and New York.  [Id. ¶ 5.i.].  The conspiracy count provides one example of the manner and means of disclosure of confidential insider information in October 2009 from Posey, a Carter's Insider Source, to Martin, then to Cooperator Number 1 and finally to Defendant Slawson.  [Id. ¶ 6].  This insider information involved the Carter's Inc., October 27, 2009, earnings delay announcement, and the indictment details the timing and disclosure of this non-public confidential information as well as the utilization of this information by Defendant to

5

sell Carter's Inc. securities on October 26, 2009, in advance of the public announcement of delayed earnings release on October 27, 2009.  [Id.].

Counts Two through Twenty-Six of the indictment charge security fraud based on the same type of insider information provided by Carter's Insider Sources and fraudulently used by Defendant, in violation of 18 U.S.C. § 1348.  [Doc. 1 ¶¶ 7.a. & b., 9. & 10.].   The indictment alleges that from late 2008 through July 2010, Defendant, aided and abetted by Cooperator Number 1, knowingly and wilfully executed and attempted to execute a scheme (1) to defraud others in connection with Carter's Inc. stock securities and (2) to obtain, by false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of Carter's Inc. stock securities.  The indictment alleges that Defendant, using misappropriated insider information from Carter's Inc. and knowing that it was disclosed in violation of fiduciary and other duties, executed and caused others to execute transactions in Carter's Inc. securities through corporate and personal online brokerage accounts earning illegal profits and illegally avoiding losses.  [Id. ¶¶ 9.-10.].  The indictment then sets out by date, transaction amount and account the allegedly fraudulent transactions.  [Id. ¶ 11].

6

And, finally, the indictment alleges a wire fraud scheme, Counts Twenty-Seven through Thirty-Six, in violation of 18 U.S.C. § 1343, in which Defendant Slawson obtained Carter's Inc. insider information via interstate wire communications, from July 2009 through July 2010, from Cooperator Number 1 and from March 2010 through July 2010, from Martin.  Defendant is alleged to have knowingly and wilfully, aided and abetted by Cooperator Number 1 and Martin, devised a scheme to defraud Carter's Inc. and to obtain money and property of Carter's Inc. by means of materially false and fraudulent pretenses and representations, and by omission of material facts, having reason to know said pretenses and representations were false and fraudulent when made and that said omissions were material, in violation of 18 U.S.C. § 1343. [Id. ¶¶ 12.-13.]  The scheme, to deprive Carter's Inc. of exclusive use of its intangible property (confidential business information used by Defendant to purchase and sell securities), was carried out by causing Posey, a Carter's Insider Source, to misappropriate insider information from Carter's Inc. in violation of his confidentiality duties and obligations and his duty to refrain from using or disclosing said information.  [Id. ¶¶ 14. & 15.].  The indictment then sets out the date and approximate time of each charged wire communication in furtherance of the scheme and the nature of the transmission, that is, interstate telephone calls.  [Id. ¶ 16.].

7

## II.      Motion to Dismiss the Indictment

Defendant Slawson seeks to dismiss the indictment for failure to allege an essential element of the crimes charged, that is, he contends that the indictment fails to allege that Defendant knew that either of the alleged tippers, Martin and Posey - the Carter's Insider Sources, "received any personal benefit in connection with passing the alleged material, non-public information to Cooperator Number 1." [Doc. 24 at 3-4].  According to Defendant, this omission is "fatal."  [Id. at 4].  Defendant further contends that Count One of the indictment must be dismissed because, although pled as a single conspiracy, the count actually pleads multiple conspiracies and is, therefore, duplicitous.  [Id. at 12].  After consideration of the arguments of the parties and the relevant case law, the court recommends that Defendant's motion to dismiss be denied.

### a.      Failure to Allege Essential Element of Crimes

Defendant contends that, in order to allege a violation of "tippee insider trading," the indictment must allege that the tippee, that is, Defendant Slawson, was personally aware of the insider's self-dealing and the benefit the insider received because of his actions.  [Doc. 24 at 3-12].  In support of his arguments, Defendant relies on the Supreme Court's decision in Dirks v. SEC, 103 S. Ct. 3255 (1983), which

8

addressed liability for violating the Security Exchange Act of 1934, specifically Rule 10b-5 and 15 U.S.C. § 78j(b).  Defendant also relies on other Supreme Court and circuit and district court decisions, some of which involved civil litigation not criminal prosecutions, discussing tippee liability for insider trading in violation of § 10(b) and Rule 10b-5 and of 15 U.S.C. § 78ff(a) and 78j(b).  [Id.].  Defendant then points out that the indictment does not allege that Defendant, who was at least once if not more removed from the insiders providing the non-public information, knew the insiders, knew that the insiders breached their duty by making the disclosures, and knew that the insiders received a benefit for their actions.  [Id.].

In response, the Government points out that Defendant's reliance on Section 10(b) and Rule 10b-5 and 15 U.S.C. § 78ff(a) and cases discussing those statutes and regulations in support of his claim that the indictment fails to allege an essential element of "insider tipper trading" is misplaced.  The Government argues that Defendant is not charged with violations of those provisions and that the case law upon which he relies is inapposite to the Title 18 crimes charged, §§ 1343, 1348 and 1349, in this indictment.  [Doc. 29 at 9-14].  The Government argues that the indictment, as pled, sufficiently pleads violations of 18 U.S.C. §§ 1343, 1348 and 1349.  [Id.].  The Government also argues that, even if the elements identified by

9

Defendant had to be proven to convict him of the charged offenses, the case law does not require all of the information identified by Defendant be pled in the indictment. [Id. at 15-17].  And the Government contends that a common sense reading of the allegations in the indictment warrants the inference that Defendant was aware that the insiders received a benefit for their actions.  [Id. at 17-21].  The first argument made by the Government is dispositive of Defendant's motion.

Rule 7(c) of the Federal Rules of Criminal Procedure provides in pertinent part:

> The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government.  It need not contain a formal introduction or conclusion.  A count may incorporate by reference an allegation made in another count.  A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.  For each count, the indictment . . . must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. . . .

Fed. R. Crim. P. 7(c) (as amended 2009).

Taking into account Rule 7(c)'s requirements, "the Eleventh Circuit has previously described as legally sufficient an indictment that (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as

10

a bar against double jeopardy for any subsequent prosecution for the same offense."
United States v. Perraud, 672 F. Supp. 2d 1328, 1345 (S.D. Fla. 2009) (quoting United
States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009)) (internal quotation marks
omitted).  Accordingly, "if the indictment tracks the language of the statute, it must
be accompanied with such a statement of the facts and circumstances as will inform
the accused of the specific offense, coming under the general description, with which
he is charged."  Id. (quoting United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir.
2003)) (internal quotation marks omitted); and see United States v. Hill, 2010 WL
128314, at *2 (N.D. Ga. January 13, 2010) (same).  In judging the sufficiency of an
indictment, courts are cautioned to use a "broad and enlightened standpoint of
common sense and right reason rather than [a] narrow standpoint of petty preciosity,
pettifogging, technicality or hair splitting fault finding."  Perraud, 672 F. Supp. 2d at
1345 (citations and internal quotation marks omitted); and see Hill, 2010 WL 128314,
at *3 ("[w]hen analyzing challenges to the sufficiency of an indictment, courts give
the indictment a common sense construction, and its validity is to be determined by
practical, not technical, considerations") (citation and internal quotation marks
omitted).  "Furthermore, an indictment for conspiracy need not be as specific as an
indictment for a substantive count."  United States v. Harrell, 737 F.2d 971, 975 (11th

Cir. 1984); accord United States v. Stoll, 2010 WL 5313486, at *3 (S.D. Fla. November 23, 2010) (same).

"By now it has become well-established that '[t]he sufficiency of a criminal indictment is determined from its face.'" United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (citations omitted).  In resolving Defendant's pretrial motion to dismiss, the court is not determining whether the Government's evidence is sufficient to find that Defendant is guilty of the charged offenses.  Such a determination is left to the trial jury.  Id. at 1263 ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes. . . .  It is well-settled that 'a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'") (citations omitted; emphasis in original); see also United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . .  The sufficiency of a criminal indictment is determined from its face.").

12

As noted, in moving to dismiss the indictment, Defendant relies on statutes and regulations, such as, the Security Exchange Act section 10(b), Rule 10b-5, and 15 U.S.C. §§ 78ff and 78j(b) - as well as case law interpreting those statutes and regulations - to argue that essential elements of offenses, not even charged in this indictment, have not been adequately pled.  [Doc. 24 at 4-12].  Defendant has not offered a single legal authority applying that case law to the Title 18 security fraud violations alleged in this indictment.[3]  [Id.].  The court will judge the sufficiency of the security fraud allegations based on the elements of the charged offenses and relevant case law.  In doing so, the court first notes that Defendant's arguments appear totally irrelevant to the substantive wire fraud counts charged, pursuant to 18 U.S.C. § 1343, in the indictment and to the charged conspiracy to the extent one object of that conspiracy is an agreement to commit wire fraud.  Defendant advances no other attack on the charges based on § 1343, and the court, having reviewed the indictment, finds that those counts are sufficiently pled and will not further address the facial validity of the indictment in that respect.

---

[3]The Government's response to the motion to dismiss fully discusses the distinction between the Security Exchange Act of 1934 and 18 U.S.C. § 1348; the purpose of the latter provision being in part to avoid the technicalities and difficulties of navigating traditional securities laws in prosecuting fraudulent security activities. [Doc. 29 at 13-15].

This indictment alleges a 18 U.S.C. § 1349 conspiracy in Count One, with one object being violation of 18 U.S.C. § 1348, and substantive counts, Two through Twenty-Six, alleging violations of that statute. [Doc. 1 ¶¶ 2. & 7.-11.].  Section 1348, in pertinent part states:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice-
>
> (1) to defraud any person in connection with any commodity for future delivery, or any option on a commodity for future delivery or any security of an issuer with a class of securities . . .; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any commodity for future delivery, or any option on a commodity for future delivery or any security of an issuer with a class of securities . . .;
>
> shall be fined under this title, or imprisoned not more than 25 years, or both.

18 U.S.C. § 1348.  And 18 U.S.C. § 1349 provides, "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."   "The statute 'does not contain an overt act requirement.'"  United States v. Deris, 2011 WL 2669635, at *3 (S.D. Fla. July 7, 2011) (citation omitted).

14

A conspiracy count must allege "the necessary elements of the offense[, that is,] that the defendants combined, conspired, confederated, and agreed to commit offenses against the United States, specifically, . . . wire fraud, and [security fraud], and that they did so knowingly and wilfully." Stoll, 2010 WL 5313486, at *5.  And "Section 1348 makes it a crime either to knowingly execute a scheme to defraud a person in connection with the sale of a security or to knowingly execute a scheme to obtain, by means of false pretenses, money or property in the connection with the sale of a security." United States v. Nicholas, III, 2008 WL 5233199, at *4 (C.D. Cal. December 15, 2008); and see United States v. Hatfield, 2009 WL 2182593, at *4 (E.D. N.Y. July 22, 2009) ("Section 1348(1) makes it unlawful 'to defraud any person in connection with any security,' whereas Section 1348(2) makes it unlawful 'to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any security.'  Neither subsection require that the Defendant purchase or sell securities.").  Absolutely nothing in the language of § 1348 or any case this court found setting forth the elements for either subsection of that statute makes reference to proving, much less alleging, that a defendant, who as part of the scheme to defraud or to obtain money or property by false and fraudulent pretenses, knew the identities of individuals providing material,

15

non-public information, knew that these individuals breached their duty by making the disclosures, and knew that these individuals received a benefit for their actions.

More importantly, the conspiracy and substantive counts sufficiently plead violations of §§ 1348 and 1349.  Count One sets forth the time frame for the conspiracy, early 2005 through July 2010, the location of the conspiracy, this District and elsewhere, identifies at least three individuals who participated with Defendant in the conspiracy – Cooperator Number 1, Martin and Posey, explaining their roles, as well as Defendant's, in the conspiratorial agreement, and specifies the objectives of the conspiracy, basically being to obtain non-public, material confidential information of Carter's Inc. for the purpose of engaging in transactions in Carter's Inc. securities, with the result being to illegally profit or avoid losses using the information.  The conspiracy count further specifies the manner and means by which the conspiratorial agreement operated – by utilizing employees of Carter's Inc., with access to confidential, non-public information, who disclosed that information, in violation of their duty to Carter's Inc., such that the information was ultimately received by Defendant and was then used by him in security transactions.  [Doc. 1 ¶¶ 1.-6.].  Although not required, the indictment also outlines how the conspiratorial agreement was employed in one instance in October 2009.  [Id. § 6.].  The court finds

16

that Count One sufficiently pleads a conspiracy in violation of § 1349 by setting forth "the conspiracy in which [Defendant] participated by identifying the time, place and participants" and the objectives, manner and means and operation of the conspiratorial agreement.  <u>Stroll</u>, 2010 WL 5313486, at *5.

Likewise, the substantive § 1348 counts, Two through Twenty-Six, are sufficiently pled.  After incorporating the background and manner and means information outlined above, the indictment alleges that Defendant, aided and abetted by Cooperator Number 1, knowingly and wilfully executed and attempted to execute a scheme (1) to defraud others in connection with Carter's Inc. stock securities and (2) to obtain, by false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of Carter's Inc. stock securities.  [Doc. 1 ¶¶ 7.-8.].  The indictment then alleges that Defendant, using misappropriated insider information from Carter's Inc. and knowing that it was disclosed in violation of fiduciary and other duties, executed and caused others to execute transactions in Carter's Inc. securities through corporate and personal online brokerage accounts earning illegal profits and illegally avoiding losses.  [<u>Id.</u> ¶¶ 9. & 10.].  The indictment also sets out by date, transaction amount and account the allegedly fraudulent transactions.  [<u>Id.</u> ¶ 11.].  Accordingly, the essential elements of the charged crime,

17

with details as to how the scheme operated - including time frame, participants and location, are pled in the indictment.  See Hatfield, 2009 WL 2182593, at *4; Nicholas, III, 2008 WL 5233199, at *4.  This court declines to impose on the charges set forth in the indictment the requirement to plead elements of offenses not charged in the indictment in light of the lack of binding or persuasive legal authority imposing same.

For these reasons, the court recommends that Defendant's motion to dismiss the indictment for failure to allege essential elements of a crime be **DENIED**.

### b.    Duplicity

Defendant Slawson also seeks dismissal of Count One of the indictment contending the conspiracy as pled is duplicitous.  [Doc. 24 at 12-20].  Defendant primarily argues that three conspiracies are pled in Count One, from February 2005 through March 2009, involving Defendant, Cooperator Number 1 and Martin, from April 2009 through July 2010, involving Defendant, Cooperator Number 1, Martin and Posey, and from March 2010 to July 2010, involving Defendant and Martin and Posey.  [Doc. 24 at 12, 16].  Defendant also contends that Count One "charges multiple different objects of the single charged conspiracy (securities fraud and wire fraud), and then, to confuse matters even further, charges these multiple objects in multiple, different ways."  [Id. at 12].   The Government responds asserting that

18

Defendant's motion misconstrues application of duplicity law to conspiracy charges, misstates the elements of the charged offenses, and improperly argues facts not pled in the indictment in support of dismissal.  The Government also points out that the relief sought by Defendant, dismissal of Count One, is not correct even if that count is duplicitous.  [Doc. 30].  After consideration of the argument of the parties and the relevant case law, the court recommends denial of the motion to dismiss Count One.

As noted, Count One charges a conspiracy in violation of 18 U.S.C. § 1349, with security fraud, in violation of 18 U.S.C. § 1348, and wire fraud, in violation of 1343, the objects of the conspiracy.  [Doc. 1 ¶¶ 1.-2.].  "The error of duplicity is present where more than a single crime is charged in one count of an indictment." United States v. Ramos, 666 F.2d 469, 473 (11th Cir. 1982); see also United States v. Seher, 562 F.3d 1344, 1360 (11th Cir. 2009) ("'A count in an indictment is duplicitous if it charges two or more separate and distinct offenses.'") (quoting United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997)).  "A duplicitous count poses three dangers: '(1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence.'" Schlei, 122 F.3d at 977 (citation omitted); see also United States v. Mock, 2012 WL

19

7987753, at *2 (M.D. Ala. November 29, 2012) (same), adopted by 2013 WL 1747800 (M.D. Ala. April 23, 2013); United States v. Hardy, 762 F. Supp. 1403, 1408 (D. Hawaii 1991) (vices of duplicity include violation of defendant's Sixth Amendment rights to notice of charges brought against him and to unanimous jury verdict and of his Fifth Amendment protection against double jeopardy).

To determine whether a single conspiracy is pled, a court should consider: "'(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants.'" United States v. Richardson, 532 F.3d 1279, 1284 (11th Cir. 2008) (citation omitted).[4]   However, "'the jury makes the initial determination of whether the evidence [introduced at trial] supports a single conspiracy . . . .'" United States v. Edouard, 485 F.3d 1324, 1347 (11th Cir. 2007) (citation omitted).  A pretrial determination as to the sufficiency of the indictment is limited only to consideration

---

[4]Defendant again asks this court to judge the sufficiency of the indictment with respect to whether a single conspiracy is pled by reference to a Second Circuit decision construing a conspiracy charge based on insider trading, charged pursuant to 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5, in violation of 18 U.S.C. § 371. [Doc. 25 at 15-20, citing United States v. Geibel, 369 F.3d 682 (2nd Cir. 2004)]. And, again, the court declines to impose requirements not adopted by the Eleventh Circuit Court of Appeals as espoused in a case not even involving the charged crimes before this court.  The court will not further address the factors identified in Geibel as necessary to establish a single conspiracy nor Defendant's arguments about the information that is allegedly missing from the conspiracy count in this case based on those factors and which he claims necessary to plead a single conspiracy.

of the face of the indictment and inferences reasonably drawn from those facts in support of the charges as pled.  See Sharpe, 438 F.3d at 1263 ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes. . . .  It is well-settled that 'a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'") (citations omitted; emphasis in original).

"Separate transactions [alleged in a conspiracy charge] are not necessarily separate conspiracies, 'so long as the conspirators act in *concert* to further a common goal.'"  Edouard, 485 F.3d at 1347 (emphasis added).  "'If a defendant's [or coconspirator's] actions facilitated the endeavors of other conspirators, or *facilitated the venture as a whole*, a single conspiracy is established.' . . . 'It is irrelevant that particular conspirators may not have known other conspirators or may not have participated in every stage of the conspiracy; all that the government must [allege] is an agreement or common purpose to violate the law and intentional joining in this goal by coconspirators.'"  Richardson, 532 F.3d at 1284 (citation omitted; emphasis in original).

21

The court finds unpersuasive Defendant's attempt, relying in large part on facts not alleged in the indictment and on inferences not properly drawn from the indictment's allegations [see Doc. 30 at 15-17], to remake the single conspiracy charged in Count One of the indictment into three separate conspiracies.  Defendant attempts to do so by focusing on the time frames when various coconspirators participated in the conspiracy and the evolving roles those conspirators played in the conspiracy.  First, contrary to Defendant's argument, a common goal existed, which for the purposes of the court's analysis "means similar or substantially the same rather than shared or coordinate."  Richardson, 532 F.3d at 1285 (citations and internal quotation marks omitted).  The goal of the conspiracy was, in violation of § 1348 and/or § 1343, to obtain non-public, material confidential information of Carter's Inc., in violation of the fiduciary and other confidentiality promises and duties of those providing the information, for the purpose of engaging in transactions in Carter's Inc. securities, with the result being to illegally profit or avoid losses using the information.  This goal remained constant.  The nature of the underlying scheme also remained constant, that is, the conspiratorial agreement operated by utilizing employees of Carter's Inc., either Martin or Posey, who had access to confidential, non-public information and who disclosed that information, in violation of their duty

22

to Carter's Inc., such that the information was ultimately received by Defendant, either through Cooperator Number 1 or Martin, and then for Defendant, who allegedly knew of the misappropriation of the information, to use the information in security transactions.  And, even as argued by Defendant, the conspiracy count as alleged establishes an overlap of participants:  Defendant, Cooperator Number 1 and Martin for the entire time frame of the conspiracy and Posey for a period overlapping the other participants.  Contrary to Defendant's arguments, Defendant need not know the identities of each participant - nor need every other participant be aware of Defendant's identity.  However, the conspiracy count includes allegations that each participant knew at least one other participant and that all of the participants were aware that insiders were funneling information to individuals outside of Carter's Inc. to further the conspiratorial agreement.  Defendant's and the identified coconspirators' "'actions *facilitated the venture as a whole*, [and, therefore,] a single conspiracy is established.'"  <u>Richardson</u>, 532 F.3d at 1284 (citation omitted; emphasis in original).

And the conspiracy count is not duplicitous simply because more than one object is identified with multiple means of establishing the objects of the conspiracy.  Although not discussed further, and no legal authority is offered to support his contention, Defendant appears to also base his claim that Count One is duplicitous on

the fact that two objects, violation of § 1348 and of § 1343, with multiple means of establishing a § 1348 violation also being pled, is alleged in Count One.  [Doc. 24 at 12].   It is well-settled that, although an indictment "may not charge multiple conspiracies in a single count[,] . . . [a] single conspiracy [ ] may have multiple objects because the single conspiracy is the crime, not its diverse objects."  United States v. Miller, 26 F. Supp. 2d 415, 423 (N.D. N.Y. 1998) (citation omitted).  As stated by the Supreme Court in Braverman v. United States, 63 S. Ct. 99 (1942), "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'"  Id. at 102 (citation omitted); see also United States v. Diaz, 690 F.2d 1352, 1356 (11th Cir. 1982) ("An indictment may charge a conspiracy with more than one distinct substantive offense. . . .").

Additionally, alleging different means to commit a § 1348 violation does not allege multiple conspiracies in Count One.  The Eleventh Circuit Court of Appeals has addressed and resolved, contrary to Defendant's contention, the issue of whether a count in an indictment, based on a penal statute setting forth alternative means for commission of the offense, is duplicitous when that count includes all of the alternative means for violating the statute.  In United States v. Burton, 871 F.2d 1566

(11th Cir. 1989), rejecting an attack on an indictment alleging a violation of 18 U.S.C. § 641, the court stated:

> Where a penal statute, such as 18 U.S.C. § 641, prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment, however, the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense, and the government may satisfy its burden by proving that the defendant, by committing any one of the acts alleged, violated the statute. . . . The conjunctive allegations do not render the indictment duplicitous.

Id. at 1573 (citations omitted); see also United States v. Cornillie, 92 F.3d 1108, 1110 (11th Cir. 1996) (same and adding that the "court's charge to the jury should track the language of the statute").  Section 1348 is the fraud statute that addresses securities and allows for the statute to be violated by a scheme to defraud or to obtain money. Charging a violation of that statute in the conjunctive only alleges a single crime.  See United States v. Harris, 2010 WL 4962981, at **3-4 (N.D. Ga. October 22, 2010) (rejecting argument that alleging multiple means of establishing § 1348 violation in a conspiracy count is duplicitous), adopted by 2010 WL 4967821 (N.D. Ga. December 1, 2010); Hatfield, 2009 WL 2182593, at *3 (rejecting the defendant's contention that subsections (1) and (2) of § 1348 constitute separate offenses which cannot be pled

25

in the same count and finding "that the challenged counts set forth different methods of committing one offense").[5]

Even if Count One was determined to be duplicitous, the remedy is not dismissal of that count of the indictment.  Any danger flowing from the duplicity of charging more than one crime in a single count is "cured by a jury instruction explaining unanimous agreement must be reached that the government proved, beyond a reasonable doubt, at least one or the other – i.e., either a scheme to defraud or to obtain money by false pretenses."  United States v. Lefebvre, 189 Fed. Appx. 767, 772-73 (10th Cir. 2006); see also United States v. Carter, 2007 WL 230451, at *4 (S.D. Ga. January 24, 2007) (dismissal of duplicitous count is not appropriate remedy because "any concern regarding jury unanimity may be addressed by curative instructions to the jury that its verdict must be unanimous on whatever specification the jurors find to be the predicate of a guilty verdict"); United States v. Campbell,

_____

[5]The district court likewise rejected the same argument made by Defendant Slawson attacking the conspiracy charge brought pursuant to § 1349.  The court stated, "Essentially, Brooks maintains that Count One requires the Government to establish two conspiracies, one in violation of Section 1348(1), and other conspiracy in violation of Section 1348(2). . . . Defendant may violate § 1349 by engaging in acts that violate either § 1348 (1) or (2).  The Government has charged that Defendants committed a single conspiracy to violate Section 1348, not two separate conspiracies."  Id., at *5.

26

2005 WL 6436621, at *7 (N.D. Ga. October 24, 2005) ("to the extent the indictment presented any duplicity, the ambiguity could be cured through jury instructions and/or special interrogatories").   And, with respect to whether a single or multiple conspiracies are alleged, again, dismissal is not the appropriate remedy. See United States v. Thomas, 2012 WL 6963671, at *4 n.4 (N.D. Ga. December 31, 2012) ("the proper remedy was not the granting of a motion to dismiss[; r]ather, the proper remedy is to require the government to elect upon which charge contained in the count it will rely"), adopted by 2013 WL 362860 (N.D. Ga. January 30, 2013); Mock, 2012 WL 7987753, at *2 (finding that dismissal of the allegedly duplicitous count from the indictment was not appropriate remedy because the trial court "is in the position that he can prepare a proper unanimity instruction and special verdict form to prevent . . . injustice").

For these reasons, the court recommends that Defendant's motion to dismiss Count One as duplicitous be **DENIED**.

### c.      Conclusion

For the foregoing reasons and based on the cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 24(1)] to dismiss the indictment be

AO 72A
(Rev.8/82)

**DENIED** and motion [Doc. 24(2)] to dismiss Count One of the indictment be **DENIED**.

## III.    Motion for Discovery

Defendant's motion for discovery actually contains five separate requests for relief, three of which remain pending before the court:  (1) bill of particulars, (2) production of materials in the possession of the SEC, and (3) to strike surplusage from the indictment.  [Doc. 25 at 3-16].[6]  The Government opposes the requested relief. [Docs. 31, 32 and 33].  The court will address each request in turn.

### a.    Bill of Particulars

Contending that the Government failed to "particularize the basic allegations of any insider trading case: (i) the substance of the alleged material, non-public information and the dates on which Mr. Slawson allegedly received this information and (ii) all specific trades that were made based on such information[,]" Defendant contends that he can "only speculate as to the Government's specific allegations." [Doc. 25 at 4].  For this reason, Defendant requests the following bill of particulars: (1) "the precise material, non-public information allegedly provided to Mr. Slawson

---

[6]The citations herein are to the Memorandum of Law in Support of [Plaintiff's] Pretrial Discovery motion, Doc. 25-7.

28

with respect to Carter's stock or otherwise to be relied on by the Government at trial;"
(2) "the specific individual(s) who were the sources or intermediate sources of
information;" (3) "the duty or duties allegedly breached;" and (4) "the trades made
based on the inside information."[7]  [Id.].  Again, Defendant relies primarily on case
law involving allegations of wrongdoing pursuant to the Security Exchange Act, from
outside this district, to argue that the information he seeks is necessary for an "insider
trading case."  [Id. at 6-11].  Defendant's arguments are undermined by his continued
misplaced reliance on decisions addressing charges and based on statutes and
regulations not at issue in this case.  The Government opposes the motion for a bill of

---

[7]Defendant makes reference to the fact that the conspiracy count only details
specific conduct occurring in late October 2009 resulting in a security transaction on
October 26, 2009, and that the substantive counts only allege security transactions
occurring after July 2009 and argues that, if the Government does not intend to
introduce evidence of security transactions occurring from February 2005 (when the
conspiracy is alleged to have commenced) to July 2009, then Count One should be
dismissed or "altered to reflect the correct time period." [Doc. 25 at 8-9]. Defendant's
contention evidences a misunderstanding of the charge in Count One and the proof
required to establish that charge.  Because no overt act need be alleged, dismissal of
Count One cannot be based on a failure to include allegations of securities
transactions, or any other conduct, within a specific time frame, see United States v.
Stein, 2012 WL 4089896, at *2 (S.D. Fla. September 13, 2012); Deris, 2011 WL
2669635, at *3, or, for that matter, based on what evidence may or may not be
introduced at trial, see Thomas, 2012 WL 6963671, at *4 n.3.  Additionally, words or
actions other than engaging in security transactions may evidence the commencement
of the conspiratorial agreement and impact the time frame for the conspiracy.

29

particulars contending that the allegations in the indictment and the discovery provided to Defendant - as well as the Jencks materials to be provided - supply Defendant with the required notice of the charges brought against him.  [Doc. 33].

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."  United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985); see also United States v. Hassoun, 477 F. Supp. 2d 1210, 1227-28 (S.D. Fla. 2007) ("A request for bill of particulars is, inter alia, befitting in those instances where defendant seeks further clarity and precision with regard to the charges that he is facing in order to adequately prepare a defense.").  "Generalized discovery is not the proper function of a bill of particulars."  Warren, 772 F.2d at 837 (citing United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981)); see also United States v. Roberts, 174 Fed. Appx. 475, 477 (11th Cir. 2006) (same).  While the court "is vested with broad discretion in deciding whether a bill of particulars should be granted[,]" United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985), "'where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request . . . may constitute

30

reversible error[,]'" Id. (quoting United States v. Crippen, 579 F.2d 340, 349 (5th Cir. 1978)).  The counts in the indictment, which have been set out in detail *supra*, sufficiently allege each charge by stating the elements of each offense charged therein and by providing details regarding the manner and means - or the scheme to defraud - by which Defendant Slawson participated in the charged conspiracy and engaged in the substantive security and wire fraud offenses.  [Doc. 1].

The court notes that the fact that discovery materials are provided to a defendant is an appropriate factor to consider in deciding whether a bill of particulars is warranted.  See Roberts, 174 Fed. Appx. at 477 ("A bill of particulars is not required where the information sought has already been provided by other sources, such as the indictment and discovery. . . ."); United States v. Al-Arian, 308 F. Supp. 2d 1322, 1359 (M.D. Fla. 2004) ("a bill of particulars is not typically warranted in so far as it seeks information already available through other sources") (citing United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986) ("Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection.")); see also United States v. Kunzman, 54 F.3d 1522, 1526 (10th Cir. 1995) (bill of particulars is not necessary when indictment is sufficiently specific and the defendant has access to the

government's file); <u>United States v. Caputo</u>, 288 F. Supp. 2d 923, 925 (N.D. Ill. 2003) (same); <u>United States v. Cooper</u>, 283 F. Supp. 2d 1215 (D. Kan. 2003) (same).

As the Government outlines, in addition to the factual allegations in the indictment, Defendant was provided with a wealth of information in discovery, which was organized in a manner to facilitate examination, to enable him to adequately prepare for defense of the charges at trial.  [Doc. 33 at 5, 7-10].  For example, with respect to Defendant's request for the identities of the individuals providing the insider information, the indictment provides the identities of the Carter's Insider Sources, Martin and Posey, and of the conduit through which their information flowed to Defendant, Cooperator Number 1 or, after Martin's employment ended, Martin. [Doc. 33 at 4 (citing Doc. 1 ¶¶ 4.d.-e. & 5.a.-e. & g.-h.)].  The court agrees that no further information is required with respect to this request.  Likewise, with respect to Defendant's request that the duties breached be identified, the Government again correctly points out that the indictment provides sufficient notice:  Carter's Insider Sources disclosed information, without authorization which Carter's policies prohibited, in violation of (1) fiduciary and other duties of trust and confidence, (2) expectation of confidentiality, (3) Carter's Inc. written policies, and (4) agreements to maintain Carter's Inc. confidential business information and to refrain from use of

32

such information in listed ways, including, for their own direct or indirect benefit or for stock trading on the basis of such information.  [Doc. 1 ¶¶ 5.c.-e. & g.].  And the Government notes that discovery produced to Defendant included Martin's and Posey's personnel files along with confidentiality and insider trading agreements and policies as identified "on a detailed discovery index."   [Doc. 33 at 5].   The Government is not required to provide any further response to either of these requests.

With respect to Defendant's requests for "the precise material, non-public information allegedly provided to Mr. Slawson with respect to Carter's stock or otherwise to be relied on by the Government at trial" and for "the trades made based on the inside information" [Doc. 25 at 4], the court finds that these requests seek evidentiary detail - in light of the information already set forth in the indictment - that is not appropriate in a bill of particulars.  See Roberts, 174 Fed. Appx. at 477 (a bill of particulars "'is not designed to compel the government to [provide] detailed exposition of its evidence'") (citation omitted); United States v. Scrushy, 2004 WL 483264, at *9 n.5 (N.D. Ala. March 3, 2004) ("[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge.  The function of the bill of particulars is to reduce surprise at the *charge*, that is, to enable the defendant to identify what he is alleged to have done in violation of law.  It is not

33

to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant.") (emphasis in original); United States v. Giffen, 379 F. Supp. 2d 337, 346 (S.D. N.Y. 2004) ("The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense.").  "Case law is also clear that the Government is not required to identify . . . specific acts or overt acts done in furtherance of a charged conspiracy by particular defendants." United States v. Leiva-Portillo, 2007 WL 1706351, at *15 (N.D. Ga. June 12, 2007) (citing, inter alia, Rosenthal, 793 F.2d at 1227); and see United States v. Wilson, 2013 WL 820726, at *2 (S.D. Ala. March 5, 2013) ("'[a] bill of particulars may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy[; n]or is the government required to provide defendants with all overt acts that might be proven at trial'") (quoting Rosenthal, 793 F.2d at 1227)).

The charged conspiracy count outlines the nature of the insider information provided to Defendant, through identified sources and involving only one entity, Carter's Inc.  This information includes financial performance, anticipated earnings and quarterly and annual financial results [Doc. 1 ¶¶ 4.d.-e.] and, more specifically, identifies the inside information disclosed "in advance of Carter's quarterly and

34

annual earnings releases and other major corporate events, [as] including information about Carter's quarterly and annual earnings per share ('EPS'), forward-looking guidance for the Company's future financial periods, and other financial performance information and whether such information would meet, miss, or beat internal company expectations and estimates, previously issued guidance and analysts' consensus expectations and estimates" [Id. ¶ 5.a.].  The indictment also provides details about disclosure of confidential insider information in October 2009 from Posey, a Carter's Insider Source, to Martin, then to Cooperator Number 1 and finally to Defendant Slawson.  [Id. ¶ 6].  This insider information involved the Carter's Inc. October 27, 2009, earnings delay announcement, and the indictment details the timing and disclosure of this non-public confidential information as well as utilization of this information by Defendant to sell Carter's Inc. securities on October 26, 2009, in advance of the public announcement of delayed earnings release on October 27, 2009.  [Id.].  Arguably, even in insider trading cases, Defendant would not be entitled to a more specific accounting of the information relayed as part of the scheme to commit securities fraud.  Accord United States v. Levy, 2013 WL 664712, at *13 (S.D. N.Y. February 25, 2013) (defendant's "request for a recounting of each specific misrepresentation and omission alleged is simply a request to compel the production

AO 72A
(Rev.8/82)

of the very type of evidentiary minutiae that is not appropriate in a bill of particulars") (citation and internal quotation marks omitted); United States v. Ghavami, 2012 WL 2878126, at *4 (S.D. N.Y. July 13, 2012) (finding that the defendant's request for the exact misrepresentations made, as well as specific details about the harm caused, is not properly the subject of a bill of particulars).

And the indictment provides sufficient information regarding the trading activity that was part of the scheme to commit securities fraud and in furtherance of the conspiratorial agreement.[8]  In addition to the securities transaction outlined in Count One [Doc. 1 ¶ 6.], the substantive security fraud counts, Two through Twenty-Six, provide details regarding twenty-five securities transactions.  [Id. ¶ 11.].  And even courts considering whether to order a bill of particulars in insider trading cases stop short of compelling the Government to provide the specifics of each trade to be relied on at trial to prove the charged conspiracy.  See United States v. Martoma, 2013 WL 2435082, at *6 (S.D. N.Y. June 5, 2013) ("'Defendants are not entitled to an itemization of trades at issue in the conspiracy counts' of insider trading cases . . . .'")

---

[8]As previously stated, neither section of the underlying securities fraud provision, 18 U.S.C. § 1348, requires any proof of trading activity on the part of any participant in the conspiracy.  See Hatfield, 2009 WL 2182593, at *4.

36

(quoting United States v. Rajaratnam, 2010 WL 2788168, at *9 (S.D. N.Y. July 13, 2010)).

Furthermore, as pointed out by the Government, substantial additional and detailed information has been provided to Defendant in discovery, which, for example, "show all of the Carter's trades executed or attempted to be executed by Defendant of which the government is aware, along with all of the phone calls between Defendant and Cooperator Number 1 or Martin for which the government has records." [Doc. 33 at 7-8]. This discovery includes information about Carter's Inc. financial and earnings information as well as equity research analyst reports. [Id. at 8-9]. Finally, the Government will produce reports of interviews with Cooperator Number 1, Martin and Posey which contain descriptions, as recalled by these individuals, of the insider information provided to Defendant. These reports will provide Defendant with all of the information that the Government has about that insider information and the securities transactions conducted based on that information.[9] [Id. at 9-10]. The court finds that the information sought by Defendant is either sufficiently set forth in the indictment or has been or will be produced to him.

---

[9]And the Government will produce this information early upon Defendant's agreement to various evidentiary stipulations. [Doc. 33 at 9].

Furthermore, Defendant seeks the details about the acts in which *he* engaged in commission of the charged offenses.  It is doubtful that Defendant could establish that, without the Government providing the details about this evidence, he was not able to prepare a defense to the charged offenses or was surprised.  In a case where the evidence being sought by a bill of particulars consists of activities in which a defendant participated or witnessed, the defendant "'could hardly have been surprised by the government's proof at trial.'"  United States v. Cantu, 557 F.2d 1173, 1178 (5th Cir. 1977) (quoting United States v. Pena, 542 F.2d 292, 293-94 (5th Cir. 1976)); see also United States v. Williams, 113 F.R.D. 177, 179 (M.D. Fla. 1986) (When the information sought involves "events in which one or more of the defendants participated, or which occurred in one or more of the defendants' presence[, t]he Eleventh Circuit has held that this sort of information need not be furnished in a bill of particulars.") (citations omitted).  Quite frankly, Defendant is aware of the Carter's Inc. information provided to him by either Cooperator Number 1 or Martin and is fully aware of the trades he conducted based on that information.

Defendant has not demonstrated that the information requested in the bill of particulars is essential to preparation of his defense at trial.  For the reasons stated, the court **DENIES** Defendant's request [Doc. 25(1)] for a bill of particulars.

38

### b.    Production of SEC Materials

Defendant next asks the court to order the Government "to produce all materials discoverable under [Rule] 16, <u>Brady</u>, and <u>Giglio</u> that are *possessed* by the SEC." [Doc. 25 at 11 (emphasis added)].  Defendant contends that "[i]t appears that the Government and the SEC are conducting a joint or related investigations of this matter" and, in support, offers the fact that "numerous discovery items from the SEC investigation" have been provided already to Defendant and that a Federal Bureau of Investigation ("FBI") press release stated, "The FBI will continue to work with its partners at the U.S. Securities and Exchange Commission in the enforcement of these federal laws."[10]   [<u>Id.</u> at 12 n.4].  Defendant apparently seeks materials in the possession of the SEC, even if a joint investigation was not conducted, because "prosecutors are certainly *aware* of the SEC's investigation."   [<u>Id.</u> at 12 (emphasis added)].  The Government opposes production of materials in the possession of the SEC noting that Defendant failed to provide any information about the alleged SEC

---

[10]As the Government points out, Defendant neglected to include another statement in the press release which undermines his reliance on that document:  "The Atlanta Regional Office of the SEC has conducted a *separate* investigation into potential civil violations of the U.S. securities laws relating to insider trading in Carter's stock."  [Doc. 31 at 6 n.2 (emphasis added)].  The court will not further address the press release or Defendant's argument based thereon.

investigation or what materials he contends should be produced, failed to allege that any SEC personnel worked under the supervision or direction of the prosecuting authority, that any resources of the FBI and SEC were pooled to conduct the criminal investigation, or that there was in fact any involvement by SEC personnel in the criminal investigation.  [Doc. 31].

The Government, in this case, the Assistant U.S. Attorney(s) responsible for prosecution of the charges asserted against Defendant in the indictment, are only required to produce Rule 16, Brady, Jencks and Giglio materials in the possession of the prosecuting authority.  See United States v. Naranjo, 634 F.3d 1198, 1211-12 (11th Cir. 2011) (citing United States v. Cagnina, 697 F.2d 915, 922 (11th Cir. 1983) ("A statement is in the possession of the United States for Jencks Act purposes if it is in the possession of a federal prosecutorial agency.") (internal quotation marks omitted), and United States v. Meros, 866 F.2d 1304, 1309 (11th Cir. 1989) ("Brady, then, applies only to information possessed by the prosecutor or anyone over whom he has authority.") (internal quotation marks omitted)).  As stated by the Supreme Court in Kyles v. Whitley, 115 S. Ct. 1555, 1567 (1995), "'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'"  Moon v. Head, 285 F.3d 1301, 1309 (11th

Cir. 2002).  However, "'[a] prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a <u>Brady</u> request for information regarding a government witness'" or for other information in the possession of third parties.  <u>Naranjo</u>, 634 F.3d at 1212 (quoting <u>Meros</u>, 866 F.2d at 1309).

In determining who is "acting on the government's behalf," the Eleventh Circuit Court of Appeals has "held that a claimant must show that the favorable evidence was possessed by 'a district's prosecution team, which includes both investigative and prosecutorial personnel.'"  <u>Moon</u>, 285 F.3d at 1309 (quoting <u>Meros</u>, 866 F.2d at 1309).  The "prosecution team" is defined as "'the prosecutor or anyone over whom he [or she] has authority.'"  <u>Id.</u> (quoting <u>Meros</u>, 866 F.2d at 1309).  And, contrary to Defendant's apparent argument [Doc. 25 at 12], a bare assertion that a federal prosecuting authority has knowledge of information or is aware of information held by other federal agencies or authorities (when separate investigations have been conducted and absent extensive collaboration) is insufficient to impute knowledge for <u>Brady</u> or for other purposes of disclosure to the federal prosecutor.  <u>Naranjo</u>, 634 F.3d at 1212 (citing <u>Moon</u>, 285 F.3d at 1309-10) ("one governmental entity's possession of favorable information should not necessarily be imputed to another"); <u>and see</u>

41

United States v. Avellino, 136 F.3d 249, 255 (2nd Cir. 1998) ("knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis'") (citation omitted); United States v. Battle, 264 F. Supp. 2d 1088, 1201 (N.D. Ga. 2003) (rejecting the defendant's implication "that because the [Bureau of Prisons ("BOP")] employees are connected with the Department of Justice that the prosecution team constructively possessed exculpatory information that could have been within the knowledge of BOP staff").

A court considering a request by a defendant for the production of material held by a separate federal entity should engage in "'a case-by-case analysis of the extent of interaction and cooperation between the'" prosecuting authority and that separate agency - in this case, the SEC.  Moon, 285 F.3d at 1309 (quoting United States v. Antone, 603 F.2d 566, 570 (5th Cir. 1979)).  Courts have considered various factors in conducting this analysis, including the pooling of investigative energies and resources, joint meetings, actions by other agency personnel taken under the

42

supervision and direction of the federal prosecutor, and any other information that might demonstrate that SEC investigators and personnel "essentially 'functioned as agents of the federal government under the principles of agency law.'" Id. at 1309-10 (quoting Antone, 603 F.2d at 570).  Defendant's motion is woefully devoid of any allegations, much less evidence, that SEC investigators and personnel were acting at the behest of the federal prosecutors or the FBI or, for that matter, were even involved in the criminal investigation of Defendant.  The mere fact that included in the discovery materials were documents originating with the SEC does not support a conclusion that the SEC was part of a joint criminal investigation, that joint meetings were held, or that resources of the SEC were utilized in the criminal investigation under the direction and supervision of the federal prosecutors.  Defendant has failed to make the necessary showing for the court to find that the SEC personnel were "acting on the government's behalf" and were, accordingly, part of the "prosecution team."

For the foregoing reasons, the court **DENIES** Defendant's motion [Doc. 25(2)] to order the Government to produce evidence in the possession of the SEC.

43

### c.      Strike Surplusage

Finally, Defendant seeks to have stricken from the indictment language that he contends is extraneous, irrelevant and prejudicial.  [Doc. 25 at 13-16].  Specifically, Defendant asks that the following words or phrases be stricken:  (1) reference to Defendant co-managing "a multi-million dollar portfolio" [Doc. 1 ¶ 4.a.] because allegations about Defendant's wealth is inflammatory; (2) allegation that Carter's Insider Sources acted for their personal benefit "which included but was not limited to . . ." [Id. ¶ 5.d.] because this language will lead the jury to speculate as to what other benefits might have been received; (3) use of the word "illegal" and "illegally" to describe earning profits and avoiding losses [Id. ¶¶ 5.e. & g. & 10.] because the words are without foundation and conclusory; and (4) statement that Martin became "an additional direct" source of information [Id. ¶ 5.h.] because injection of this descriptor is improper editorializing.  [Doc. 25 at 14-16].  The Government opposes the motion to strike arguing that Defendant has not established that the challenged language is irrelevant as well as inflammatory and prejudicial.  [Doc. 32].

Rule 7(d) of the Federal Rules of Criminal Procedure provides that, "Upon the defendant's motion, the court may strike surplusage from the indictment . . . ."  Fed. R. Crim. P. 7(d) (as amended 2009).  Although Rule 7(d) "authorizes the Court to

strike surplusage from an indictment on motion of the defendant[,]" Fed. R. Crim. P. 7(d), "[a] motion to strike surplusage from an indictment should not be granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . [T]his is a most exacting standard." United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (citations and internal quotation marks omitted); accord United States v. Brye, 318 Fed. Appx. 878, 880 (11th Cir. 2009) (same); United States v. Smallwood, 2011 WL 2784434, at *10 (N.D. Tex. July 15, 2011) ("the court will not strike allegations that are *relevant*, no matter how prejudicial or inflammatory they may be to the defendant") (emphasis in original). And, in order to determine whether the allegations are relevant to the charges and the evidence introduced at trial, "[t]he Court may reserve ruling on a motion to strike surplusage until hearing the evidence and determining its relevance at trial." United States v. Al-Arian, 308 F. Supp. 2d 1322, 1333 (M.D. Fla. 2004).

With respect to Defendant's request to strike the reference to his co-management of a multi-million dollar portfolio [Doc. 1 ¶ 4.a.], Defendant has not demonstrated that the reference is irrelevant to the charged securities and wire fraud conspiracy or that the phrase is inflammatory and prejudicial. Contrary to Defendant's argument, this language does not address Defendant's personal wealth but, instead,

45

as argued by the Government, concerns Defendant's employment background which is relevant to Defendant's experience and knowledge of securities trading and transactions and goes to proof of Defendant's intent to engage in the alleged fraudulent conduct.  [Doc. 32 at 4-7].  The Government states that the evidence introduced at trial on the conspiracy and substantive counts will include large securities transactions involving Carter's Inc. stocks engaged in by Defendant for corporate entities as well as for himself and his family and his handling of investment portfolios involving large amounts of funds.  [Id. at 7-10].  The challenged phrase, according to the Government, accurately describes the type of portfolios handled by Defendant.  See United States v. Reid, 2010 WL 2653229, *2 (M.D. Fla. July 2, 2010) (rejecting the defendant's claim that use of the words "upper-end" to describe the homes involved in charged mortgage fraud were prejudicial; all of the homes involved in the fraud were purchased for more than $400,000; thus, the court found that "upper-end" was accurate description of the purchase prices).  And evidence of Defendant's personal profit as a result of the alleged fraudulent activity is arguably admissible to establish Defendant's intent to participate in the charged criminal conduct.  See United States v. Forehand, 577 Fed. Appx. 942, 945 (11th Cir. 2014); United States v.

46

Bradley, 644 F.3d 1213, 1239 (11ᵗʰ Cir. 2011).  The court finds that this phrase should

not be stricken as surplusage.

Defendant also has failed to meet the exacting standard necessary to have the

words "included but was not limited to" [Doc. 1 ¶ 5.d.] stricken from the indictment.

Defendant's only stated concern regarding this language is the potential of the jury

speculating on what other benefits the Carter's Insider Sources might have received.

This challenge to the phrase does not support a finding that the language is irrelevant

much less inflammatory or prejudicial.  As the Government points out, this language

is included in the "manner and means" section of the conspiracy, and the court finds

that use of such language to exemplify benefits received by Martin and Posey and as

illustrative of the conspiratorial conduct is not improper.  See Al-Arian, 308 F. Supp.

2d at 1357-58 (rejecting before trial the defendant's contention that alleging in the

conspiracy count that the defendant and his co-conspirators, known and unknown,

"committed certain overt acts 'among others' . . . invites a jury to improperly infer that

Defendants were involved in other acts or with other persons not charged in the

Indictment"); United States v. Lockheed Corp., 1995 WL 17064093, at **6-7 (N.D.

Ga. January 3, 1995) (rejecting the defendants' contention that use of "phrases such

as 'among others,' 'elsewhere,' and 'various additional methods' are prejudicial and

47

irrelevant surplusage because they will allow the prosecution at trial to enlarge the charges against the defendants and will lead the jury to speculate" about the actions of the defendants).

Defendant next contends that the descriptors "illegal" and "illegally" used in connection with earning profits and avoiding losses in conducting securities transactions based on the insider information obtained about Carter's Inc. are "without foundation and conclusory in nature" and are inflammatory. [Doc. 25 at 15-16 (citing Doc. 1 ¶¶ 5.e. & g. & 10.)]. Contrary to the Defendant's conclusory claim, the essence of the charged conspiracy to commit security and wire fraud is the contention that profits earned and losses avoided by Defendant were illegal. As the Government points out, the indictment alleges that Defendant engaged in criminal conduct and that he violated various statutes. In light of this fact, describing the profits earned and losses avoided by such conduct to be illegal simply is not prejudicial. In fact, use of descriptors for the conduct charged in indictments, which - as in this case - describe the nature of the proof to be offered at trial - is relevant to the charged offenses. The Government in this case intends to prove that Defendant, through the charged fraudulent activity, illegally profited and illegally avoided losses. See, e.g., United States v. Laurienti, 611 F.3d 530, 547 (9th Cir. 2010) (finding "characterization of the

sales practices as unlawful was relevant, because the government sought to prove that, as conducted by Defendants . . ., the practices were indeed unlawful" and denying motion to strike); United States v. Anyanwu, 2013 WL 1558712, at *4 (N.D. Ga. March 12, 2013) (refusing to strike as surplusage description of marriages as fraudulent because the description was relevant to the alleged visa fraud associated with the marriages at issue); Stein, 2012 WL 4089896, at *8 (rejecting the defendant's motion to strike use of word "sham" finding term was relevant "because it conveys that the consulting agreements were fraudulent and used to misappropriate assets" as alleged in the indictment); United States v. Williams, 2008 WL 4867748, at *4 (S.D. Fla. November 10, 2008) (refusing to strike word "corrupt" to describe hedge fund manager and "sham" to describe nature of consulting agreement because the descriptors were relevant to Government's contentions regarding the defendant's criminal conduct).  The court finds that these words should not be stricken.

Finally, Defendant seeks to strike the reference to Martin as "an additional direct source of Inside Information . . ." as improperly editorializing and confusing. [Doc. 25 at 15-16 (citing Doc. 1 ¶ 5.h.)].  The court simply does not agree that the description of Martin as an additional direct source of information is improper or confusing and finds that Defendant has not demonstrated that the phrase is irrelevant

49

or prejudicial.   The indictment is, frankly, pretty clear that initially Cooperator Number 1 was Defendant's direct source for insider information obtained from Martin and/or Posey and that from March 2010 through July 2010, Defendant Slawson also obtained insider information directly from Martin who had obtained the information from Posey.  [Doc. 1 ¶¶ 5.a.-b. & h.].  The Government alleges in the indictment and intends to prove at trial that Cooperator Number 1 was one direct source to Defendant of insider information and, after March 2010, that Martin became an additional direct source of insider information.  The language is relevant to the charged conspiracy and is not confusing.

Accordingly, the court finds that the allegedly surplus language in the indictment identified by Defendant in his motion contains allegations that may be relevant and material to the charged offenses.  Because Defendant must prove both that the challenged allegations are not relevant as well as being inflammatory and prejudicial, see United States v. Salvagno, 306 F. Supp. 2d 258, 268 (N.D. N.Y. 2004) ("[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.") (citations and internal quotation marks omitted), the court recommends that the motion to strike be denied and that any reconsideration of the motion occur after introduction of the

50

Government's evidence at trial.  See United States v. Kelley, 2009 WL 2176347, at *2 (S.D. Ala. July 17, 2009) ("After the court has heard all the evidence, the defendants may make a motion to reconsider this ruling as to specific surplus language that they contend is unfairly prejudicial and inflammatory); United States v. Alexander, 2008 WL 2130185, at *4 (W.D. La. May 18, 2008) (noting, to the extent the defendant contends some of the allegations in the indictment are not admissible, the court may address these concerns by summarizing the indictment for the jury, instead of reading it, at the beginning of trial, and to the extent evidence is held inadmissible, related allegations in the indictment can be stricken before the indictment is provided to the jury for deliberations).[11]

For these reasons, the court **RECOMMENDS** that Defendant's motion [Doc. 25(3)] to strike surplusage be **DENIED**.

---

[11]The Eleventh Circuit Court of Appeals "ha[s] found that a defendant was not unduly prejudiced by language that was not stricken from an indictment where the court provided the jury with only a summary of the indictment that did not include references to the disputed language." Byre, 318 Fed. Appx. at 880.

51

**IV.    Conclusion**

For the foregoing reasons and cited authority, the court

(1) **RECOMMENDS** that Defendant's motion [Doc. 24(1)] to dismiss the indictment for failure to allege an essential element be **DENIED**;

(2) **RECOMMENDS** that Defendant's motion [Doc. 24(2)] to dismiss Count One for duplicity be **DENIED**; and

(3) **RECOMMENDS** that Defendant's motion [Doc. 25(3)] to strike surplusage be **DENIED**; and the court

(1) **ORDERS** that Defendant's motion [Doc. 25(1)] for a bill of particulars be **DENIED**; and

(2) **ORDERS** that Defendant's motion [Doc. 25(2)] for the Government to disclose materials in the possession of the SEC be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

52

**IT IS SO RECOMMENDED AND ORDERED**, this 7th day of November, 2014.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

53